UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JAMES STOKES,

     Plaintiff,

v.                                Case No. 3:14cv378-MCR-CJK

OFFICER JOHN ALEXANDER FOX,

     Defendant.

_____/

REPORT AND RECOMMENDATION

     This matter, filed under 42 U.S.C. § 1983, is before the court on defendant's motion for summary judgment (doc. 32) and plaintiff's statement of facts in opposition (doc. 34).[1] The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(E). Having fully considered the parties' submissions, the record, and the relevant case law, the undersigned recommends defendant's motion for summary judgment be granted.

_____

[1]    Plaintiff is proceeding *pro se*.

## BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff filed this action under 42 U.S.C. § 1983, naming a single defendant, John Alexander Fox, an officer with the Pensacola Police Department. On August 6, 2008, defendant and two other officers, Officers Hilton and Gratham, were on routine patrol when they entered Ray's Soul City ("Ray's"), a bar plaintiff frequented to play pool. The officers knew Ray's as a place where drug and other criminal activity took place.

Upon entering Ray's, the officers walked to the back of the bar, where they observed four people standing around a pool table. Officer Hilton looked in a trash can near the pool table and discovered what looked like a plastic bag containing a large piece of crack cocaine and two smaller bags of powder cocaine that "appeared to have just been placed there."[3] Doc. 32-1 at p. 1. Given the volume of drugs recovered, the officers decided to investigate the matter and speak to the individuals

---

[2] The facts pertinent to the resolution of defendant's motion are drawn from plaintiff's second amended complaint (doc. 9), the operative pleading in the matter, and the evidence in the summary judgment record (docs. 32, 34). *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment). Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005).

[3] The items subsequently tested positive for cocaine. According to defendant, the large piece of crack cocaine weighed approximately 24.8 grams, one of the bags of power cocaine weighed approximately 3.7 grams, and the other bag of powder cocaine weighed approximately 1.5 grams.

standing near the trash can, one of whom was plaintiff.[4]  The bar was noisy, dark, and occupied by other patrons; the officers thus asked the men to go outside so they could communicate more effectively.

Andre Townsend agreed to go outside to speak to the officers.  Townsend said he believed plaintiff threw the narcotics in the trash can.  Kavin Johnson also agreed to go outside, but he said he knew nothing about the drugs.  Daniel Sigmen exited the establishment but denied knowledge of the drugs.  Plaintiff refused to leave the bar.  Defendant explained to plaintiff that he was investigating the matter and wished to speak to him but could not effectively do so inside the bar.  Plaintiff nevertheless continued to refuse to go outside to speak to the officers.  Defendant therefore cuffed plaintiff and escorted him out.

Once outside the bar, defendant read plaintiff his constitutional rights.  Defendant says he recognized plaintiff's vehicle "from a previous encounter."  Doc. 32-1 at p. 2.  Officer Bell deployed his K-9 around the vehicle, and the K-9 alerted to the possible presence of narcotics.  A search of the vehicle, however, yielded no results.[5]  The handcuffs were removed.

_____

[4] By that time, a K-9 officer, Alex Bell, had arrived on the scene.

[5] Officer Bell explained that "[i]t's not that he got it wrong.  It's residual odor.  The dog smells in parts per million compared to us that smell in parts per hundred.  So he can detect the most minute

Plaintiff consented when Officer Bell asked if he could search plaintiff for weapons. According to Officer Bell's declaration, Bell requested the search because he was "concerned, because a large amount of cocaine had been found inside the bar and one of the witnesses indicated that Mr. Stokes was responsible, that there might be an attempt at resistance and that Mr. Stokes might be armed."[6] Doc. 32-2 at p. 1. While searching plaintiff, officer Bell detected a suspicious object in plaintiff's right rear pants pocket, which he said "felt like it could be contraband, such as a package of cocaine, a suspicion that came immediately to mind since a large amount of cocaine had just been found in the bar and the witness had said Mr. Stokes left it there." Doc. 32-2 at p. 1. Officer Bell thus "squeezed to check what the item was." Doc. 32 at p. 3.

Officer Bell says he asked plaintiff if he could search the pocket and plaintiff consented; plaintiff disputed that fact at the eventual criminal trial. In any event, Officer Bell removed a napkin from plaintiff's pocket and handed it to Officer Hilton. Bell denies saying anything to Stokes while conducting the search. Doc. 32-2 at p. 2. Officer Hilton opened the napkin and discovered several plastic bags containing

---

odor of any particle in that vehicle. . . . It was just the odor that was present." Doc. 32-3 at p.62.

[6] In his Declaration, defendant essentially confirmed the reasons for the search. *See* Doc. 32-1 at pg. 2.

a powdery substance.[7]  Defendant says plaintiff confirmed the substance was cocaine and stated it was for his personal use; plaintiff disputed that fact at trial.  Defendant placed plaintiff under arrest and charged him with possession of cocaine.

Plaintiff was tried and convicted.  He challenged the conviction based on alleged ineffective assistance of counsel – specifically, counsel's failure to challenge the legality of the search and seizure.  The circuit court vacated the conviction, and the State declined to re-prosecute the case.  Plaintiff then filed this action, asserting claims against Officer Fox alone under the Fourth and Fourteenth Amendments, based on the alleged unlawful search and arrest, and for malicious prosecution.  He seeks $2,000,000 in compensatory damages and $2,000,000 in punitive damages.

Defendant argues he cannot be held liable for a Fourth Amendment violation based on the search because the undisputed evidence shows he did not conduct the search.  He also invokes the "plain feel" doctrine, arguing Officer Bell had probable cause to remove the cocaine from plaintiff's pocket and he, therefore, had probable cause for the arrest.  Finally, defendant argues he is entitled to qualified immunity.

---

[7] This substance also subsequently tested positive for cocaine and weighed approximately 1.5 grams.

Case No. 3:14cv378-MCR-CJK

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the non-moving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995).

Case No. 3:14cv378-MCR-CJK

Generally, for purposes of summary judgment, a court must view the facts in the light most favorable to the non-moving party (here, plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Nevertheless, "the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is 'merely colorable' or 'not significantly probative.'" *Vega v. Invesco Group, Ltd.*, 432 F. App'x 867, 869-70 (11th Cir. 2011). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (*citing Anderson*, 477 U.S. at 251).

## DISCUSSION

A viable claim under § 1983 requires plaintiff to establish two essential elements:

1.  the conduct complained of was committed by a person acting under color of state law; and

2.  this conduct deprived plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986); *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). It is undisputed defendant was acting under color of state law at the time of the events giving rise to plaintiff's complaint. Moreover, as set forth above, plaintiff asserts claims under the Fourth and Fourteenth Amendments to the United States Constitution.

1.     Unlawful Search, Seizure, and Arrest

Plaintiff asserts a Fourth Amendment claim based on the search, seizure, and arrest. The undisputed evidence, however, shows defendant did not conduct the search and seizure, nor did plaintiff adduce evidence to show Fox acted in concert with another officer in that regard. Defendant therefore cannot be held liable for a Fourth Amendment violation based on the alleged unlawful search and seizure.

With regard to the arrest, "[u]nder the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right not to be arrested without probable cause." *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the

circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. The existence of probable cause to arrest is based on objective standards." *Id.* (citations omitted). When present, probable cause "is an absolute bar to a section 1983 action for false arrest." *Marx v. Gumbinner*, 905 F.2d 1503, 1505-06 (11th Cir. 1990). "That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Id.* at 1507.

Here, defendant arrested plaintiff based on the cocaine Officer Bell found in plaintiff's pocket pursuant to a search and seizure plaintiff claims was unlawful. "Time and again, th[e Supreme] Court has observed that searches and seizures conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993) (internal marks omitted). "One such exception was recognized in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which held that 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot . . . ,' the officer may briefly stop the suspicious person and make 'reasonable

inquiries' aimed at confirming or dispelling his suspicions." *Dickerson*, 508 U.S. at 372-73 (*quoting Terry*, 392 U.S. at 30). "*Terry* further held that '[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' the officer may conduct a patdown search 'to determine whether the person is in fact carrying a weapon.'" *Dickerson*, 508 U.S. at 373 (*quoting Terry*, 392 U.S. at 24). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence. . . ." *Dickerson*, 508 U.S. at 373 (internal marks omitted). "[A] protective search—permitted without a warrant and on the basis of reasonable suspicion less than probable cause—must be strictly 'limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby.'" *Id.* (*quoting Terry*, 392 U.S. at 26). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Dickerson*, 508 U.S. at 373.

The issue before the Court in *Dickerson*, a case factually similar to the one at bar, was "whether police officers may seize nonthreatening contraband detected during a protective patdown search of the sort permitted by *Terry*." *Id.* The Court

held "the answer is clearly that they may, so long as the officers' search stays within

the bounds marked by *Terry*." *Id.* Applying the logic of the plain-view doctrine to

instances in which an officer "discovers contraband through the sense of touch during

an otherwise lawful search," the Court noted "[t]he rationale of the plain-view

doctrine is that if contraband is left in open view and is observed by a police officer

from a lawful vantage point, there has been no invasion of a legitimate expectation

of privacy and thus no 'search' within the meaning of the Fourth Amendment – or at

least no search independent of the initial intrusion that gave the officers their vantage

point." *Id.* at 375. The Court explained,

> [t]he warrantless seizure of contraband that presents itself
> in this manner is deemed justified by the realization that
> resort to a neutral magistrate under such circumstances
> would often be impracticable and would do little to
> promote the objectives of the Fourth Amendment. The
> same can be said of tactile discoveries of contraband. If a
> police officer lawfully pats down a suspect's outer clothing
> and feels an object whose contour or mass makes its
> identity immediately apparent, there has been no invasion
> of the suspect's privacy beyond that already authorized by
> the officer's search for weapons; if the object is
> contraband, its warrantless seizure would be justified by
> the same practical considerations that inhere in the
> plain-view context.

*Id.* at 375-76 (internal citations omitted). "The police officer in each [case would

have] had a prior justification for an intrusion in the course of which he came

inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification . . . and permits the warrantless seizure." *Id.* n.3 (internal marks omitted). The Court found the officer in *Dickerson* exceeded the scope of a *Terry* search by not just patting the object in the suspect's pocket, but by also "examin[ing] it with [his] fingers," causing it to slide, revealing what the officer believed to be a "lump of crack cocaine in cellophane."[8] *Id.* at 369.

Here, as in *Dickerson*, plaintiff does not challenge the *Terry* stop and patdown search, but challenges the search of his pocket, seizure of contraband, and subsequent arrest based thereon. Like the officer in *Dickerson*, Officer Bell discovered an object in plaintiff's pocket during a lawful patdown search. He then squeezed the object and reached in plaintiff's pocket and removed it. For purposes of determining the legality of the search and seizure, the question, according to *Dickerson*, is whether Officer

---

[8] Specifically, the Court held as follows:

> Although the officer was lawfully in a position to feel the lump in respondent's pocket, because *Terry* entitled him to place his hands upon respondent's jacket, the court below determined that the incriminating character of the object was not immediately apparent to him. Rather, the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or by any other exception to the warrant requirement. Because this further search of respondent's pocket was constitutionally invalid, the seizure of the cocaine that followed is likewise unconstitutional.

*Id.* at 378.

Case No. 3:14cv378-MCR-CJK

Bell exceeded the permissible scope of the search in squeezing the object and then removing it.

Prior to the arrest, officers found a significant amount of cocaine in a trash can in close proximity to plaintiff. Three of four individuals in the area of the trash can spoke to the officers; plaintiff refused to cooperate. One of the individuals attributed the cocaine to defendant. A K-9 alerted to the possible presence of narcotics in plaintiff's vehicle, which defendant recognized from prior experience. Plaintiff consented to a pat-down search, and Officer Bell discovered what he says felt like it could be "contraband." Officer Bell removed the object from plaintiff's pocket, and it subsequently was confirmed to be cocaine.

If Officer Bell discovered the contraband during a limited patdown search authorized by *Terry*, he was legally entitled to seize it. *See, e.g., Malcolm v. City of Miami Police*, 574 F. App'x 881, 884 (11th Cir. 2014) ("Defendants would have been entitled to reach into [suspect's] pockets and retrieve what they could readily identify—based on patdown search of the outside of [suspect's] clothing—as contraband.") (*citing Dickerson*, 113 S. Ct. at 2137). Whether Officer Bell exceeded the scope of a lawful patdown search by squeezing the object (a napkin which Bell later said felt like "contraband," a particularly unenlightening characterization), and

whether defendant was aware Officer Bell had conducted an unlawful search, are questions of fact. Significantly, in his declaration in support of summary judgment, defendant acknowledges he was "nearby at the time of Officer Bell's search" and "observed Officer Bell detect a suspicious object in Stokes' right rear pants pocket."[9] Doc. 32-1 at p. 2. Something – undisclosed by Fox in this proceeding – alerted Fox to the "suspicious" nature of the napkin, ultimately squeezed and removed by Officer Bell. Defendant also acknowledges that he heard Bell ask "Stokes if he could search the pocket."[10] Doc. 32-1 at p. 2.

Given the circumstances of the event, and despite Bell's denial that he spoke to Fox, a reasonable fact finder could infer that Fox was very much in proximity to the transaction that transpired between plaintiff and Officer Bell. This is particularly true in light of Fox's sworn declaration that he observed Bell "detect a suspicious

---

[9] Defendant's proximity to the search and seizure likely precludes application of the "fellow officer rule." *See Killmon v. City of Miami*, 199 F. App'x 796, 800 (11th Cir. 2006) ("When an officer is present with a fellow officer and both observe the same course of events, it is unreasonable for an officer to rely upon the fellow-officer rule to determine that probable cause exists."). That, too, is a question of fact.

[10] Whether plaintiff consented to a search of his pocket also is a question of fact. Even if plaintiff consented to the search, however, the seizure of the cocaine may have been rendered unlawful if Officer Bell exceeded the scope of a *Terry* search before asking for plaintiff's consent. *See, e.g., U.S. v. Delancy*, 502 F.3d 1297, 1308 (11th Cir. 2007) (noting that when considering the validity of a search and seizure following prior illegal police activity, the court must determine first, whether consent was voluntary and second, whether the evidence found during the search was "'fruit of the poisonous tree'–the product of an illegal entry").

object." Hence, a jury could infer defendant Fox saw the details of the search and should have had reason to know it was not legal under *Dickerson*. Of course, in the summary judgment context, these observations are not findings of fact, but reasonable inferences available to the fact finder. The inquiry, however, does not end there because, as discussed in more detail below, the Eleventh Circuit has held that evidence seized as a result of an unlawful search provides probable cause for an arrest for purposes of a civil action.

   2.   Malicious Prosecution

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Kjellsen v. Mills*, 517 F.3d 1232, 1237 (11th Cir. 2008) (internal marks omitted). "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law." *Id.* (internal marks omitted). "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of [his] Fourth Amendment right to be free from unreasonable seizures."

*Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). "As to the first prong, the constituent elements of the common law tort of malicious prosecution are: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."[11] *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1256 (11th Cir. 2010) (internal marks omitted). "Because lack of probable cause is a required element to prove a § 1983 claim for malicious prosecution in violation of the Constitution, the existence of probable cause defeats the claim." *Kjellsen*, 517 F.3d at 1237. Plaintiff's malicious prosecution claim thus turns on whether defendant had probable cause for the arrest.

A recent Eleventh Circuit case, *Black v. Wigington*, 811 F.3d 1259 (11th Cir. 2016), is dispositive of plaintiff's claims. In *Black*, two sheriff's deputies were attempting to execute an arrest warrant for William Lynn "Rabbit" Wilson. *Id.* at 1263. When the deputies drove to Rabbit's last known address, they discovered a

---

[11] Under Florida law, to support a claim of malicious prosecution, a plaintiff must establish each of the following 6 elements: (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding. *Kingsland, supra* (*citing Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002)) (other citations omitted).

dilapidated trailer in the woods. *Id.* They knocked on the front door, but received no response. *Id.* The deputies thus walked to the back of the trailer, where they observed a door with a screened window that had been cut near the door knob. *Id.* The deputies suspected a burglary and turned the doorknob, which was unlocked. *Id.* They thus entered the trailer, purportedly to perform a protective sweep. *Id.*

While inside the trailer, the deputies observed marijuana, pill bottles containing marijuana seeds and roaches, and bulletproof vests and t-shirts belonging to the sheriff's department. *Id.* The deputies called their supervisor, Investigator Robert Wilson. *Id.* When Wilson arrived, he instructed the deputies to stay put while he obtained a search warrant. *Id.* While the deputies waited at the trailer, two individuals, Ernest Black and Amy Black, arrived. *Id.* The Blacks, not Rabbit, occupied the trailer. *Id.*

Investigator Wilson returned with a search warrant, and the officers conducted a search, pursuant to which they seized the marijuana and items from the sheriff's department, along with several crack pipes. *Id.* Later that day, Investigator Wilson applied for and received an arrest warrant based upon "the evidence that the deputies found in the Black's trailer." *Id.* at 1263. The deputies arrested the Blacks, and the Blacks ultimately were prosecuted for possession with intent to distribute marijuana,

possession of drug-related objects, and theft by receiving stolen property. *Id.* at 1263-64.

During the course of the criminal proceedings, the Blacks moved to suppress the evidence found in the trailer, arguing it was discovered as a result of an illegal search. *Id.* at 1264. The court agreed and granted the Blacks' motion to suppress, finding the deputies' initial entry into the trailer illegal, rending the search warrant invalid as well. *Id.* The evidence was suppressed, and the charges were dropped. *Id.* The Blacks sued a number of individuals, asserting various claims under state and federal law, including a claim of malicious prosecution against the deputies and Wilson. *Id.*

In the civil case, the officers moved for summary judgment, arguing they were entitled to qualified immunity with regard to the malicious prosecution claim. *Id.* The district court rejected the officers' argument, and the officers appealed. *Id.* at 1265. The officers argued on appeal that they did not violate the Blacks' rights because the items found in the trailer provided probable cause for the arrest and were not subject to the exclusionary rule applied in criminal proceedings.[12] *Id.* at 1266-67.

---

[12] As the Supreme Court explained, the exclusionary rule is "a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231-32 (2011).

In considering the Blacks' malicious prosecution claim, the court confirmed that "the presence of probable cause defeats a claim of malicious prosecution;" it likewise confirmed that "[a] plaintiff cannot recover for malicious prosecution unless she proves a violation of her Fourth Amendment right to be free from unreasonable seizures."[13] *Id.* at 1267 (internal marks omitted). The court found the arrest warrants supported by probable cause, noting "[p]robable cause means facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed . . . an offense." *Id.* (internal marks omitted). The court recounted the evidence found in the trailer, which "suggested that the Blacks had committed the alleged crimes." *Id.* Although the evidence would have been excluded at a criminal trial, the court disposed of the Blacks' argument that the evidence could not provide probable cause in the civil action, finding the Blacks "wrongly assume[d] that the exclusionary rule applies in this civil case." *Id.*

---

[13] The court further explained that "the illegal seizure cannot be just any seizure: unlike the torts of false arrest and false imprisonment, the tort of malicious prosecution requires a seizure 'pursuant to legal process.'" *Id.* (*quoting Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). "Legal process includes an arrest warrant." *Id.* "A police officer who applies for an arrest warrant can be liable for malicious prosecution if he should have known that his application failed to establish probable cause . . . or if he made statements or omissions in his application that were material and perjurious or recklessly false . . . ." *Id.* (internal marks and citations omitted). "Concomitantly, a police officer cannot be liable for malicious prosecution if the arrest warrant was supported by probable cause." *Id.*

The court explained that "[i]n a *criminal* case, a warrant based on evidence discovered during an illegal search might be invalid as 'fruit of the poisonous tree'" and "[t]he fruit-of-the-poisonous-tree doctrine is a component of the exclusionary rule." *Id.* (emphasis in original). "But the exclusionary rule is not a 'personal constitutional right' or a requirement of the Fourth Amendment; it is a 'judicially created remedy' that is meant to prevent violations of the Fourth Amendment 'through its deterrent effect.'" *Id.* (*quoting United States v. Calandra*, 414 U.S. 338, 347–48 (1974)). "Because the exclusionary rule 'exacts a heavy toll on both the judicial system and society at large' by 'requir[ing] courts to ignore reliable, trustworthy evidence,' *Davis v. United States*, 564 U.S. 229, 131 S.Ct. 2419, 2427, 180 L.Ed.2d 285 (2011), the rule does not apply unless 'its deterrence benefits outweigh its substantial social costs,' *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363, 118 S.Ct. 2014, 2019, 141 L.Ed.2d 344 (1998) (quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984))." *Id.* (internal marks omitted).

According to the Eleventh Circuit, "[t]he Supreme Court has never held that the benefits of the exclusionary rule outweigh its costs in a civil case." *Id.* at 1267-68. The former Fifth Circuit also held the exclusionary rule does not apply in a civil

suit against police officers, *see Jonas v. City of Atlanta*, 647 F.2d 580, 587–88 (5th Cir. 1981),[14] *abrogated in part on other grounds by Lindsey v. Storey*, 936 F.2d 554 (11th Cir.1991), as have other circuit courts of appeal, *see Machado v. Weare Police Dep't*, 494 F. App'x 102, 106 (1st Cir. 2012) (refusing to apply exclusionary rule in civil proceeding); *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) (noting the fruit of the poisonous tree doctrine "is an extension of the long-recognized exclusionary rule . . . and as such has generally been held 'to apply only in criminal trials'" and that the court was aware of "no case in which the doctrine has been successfully invoked to support a § 1983 claim, and [saw] no reason why it could be") (*quoting Scott*, 524 U.S. at 357); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997) (explaining "[t]he rationale behind the exclusionary rule" and refusing, "[b]ased on the deterrent rationale and the precedent, . . . to ignore and exclude [illegally obtained] evidence").

The Eleventh Circuit expressly joined those circuits, rationalizing that "[t]he cost of applying the exclusionary rule in this context is significant: officers could be forced to pay damages based on an overly truncated version of the evidence. And the

---

[14] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. The Eleventh Circuit relied fairly heavily on *Jonas* in finding the exclusionary rule does not apply in the civil context.

deterrence benefits are minuscule." *Id.* at 1268. In the Eleventh Circuit's view, "[p]olice officers are already deterred from violating the Fourth Amendment because the evidence that they find during an illegal search or seizure cannot be used in a criminal prosecution—the primary concern and duty of the police." *Id.* (internal marks omitted). "Moreover, plaintiffs can still sue a police officer for the illegal search or seizure, regardless whether the officers can rely on illegally obtained evidence to defend themselves against other types of claims. This threat of civil liability will adequately deter police officers from violating the Fourth Amendment, whether or not the exclusionary rule applies in civil cases." *Id.* "The additional marginal deterrence of applying the exclusionary rule in this context would not outweigh the societal cost of excluding relevant evidence and decreasing the possibility of obtaining accurate factual findings." *Id.* (internal marks omitted). "And we see no difference between applying the exclusionary rule and preventing an officer from proving probable cause based on evidence obtained during an illegal search." *Id.* "Exclusion of the evidence found by [the officers] on the basis that they had no legal right to search the [area] would, in effect, be an application of the exclusionary rule to this case. Such an application would be inappropriate." *Id.* (internal marks omitted). "Accordingly," the court found, "the officers can rely on

the evidence that they found in the Blacks' trailer to prove that the arrest warrants were supported by probable cause." *Id.*

*Black* controls here on the issue of probable cause for the arrest. One might surmise that the range of arrest-related claims, including malicious prosecution, brought by a plaintiff who had prevailed in an underlying criminal case, yet would be precluded by *Black*, could be quite broad. Nevertheless, based on *Black*, and its calculus that allowing claims like this one to go forward would provide only marginal deterrence (as compared to societal cost) to unlawful police conduct, the undersigned cannot but conclude that plaintiff's arrest was supported by probable cause and defendant is entitled to qualified immunity with respect to plaintiff's claims.[15]

Accordingly, it is respectfully RECOMMENDED that defendant's motion for summary judgment (doc. 32) be GRANTED, and judgment be entered for defendant Fox.

At Pensacola, Florida, this 24th day of August, 2017.

/s/ *Charles J. Kahn, Jr.*

**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[15] A finding of probable cause not only mandates summary judgment with regard to plaintiff's claims, but it also entitles defendant to qualified immunity, according to *Black*. *Id.* at 1269.

Case No. 3:14cv378-MCR-CJK

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appea on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on objected-to factual and legal conclusions.  *See* U.S. Ct. App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.